UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DYLAN ROBERTS,<br><br>    Plaintiff,<br><br>    v.<br><br>TOWN OF BRIDGEWATER, ROBERT GRAY, JR., and LISA M. MITTON,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 15-10266-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                                   **July 28, 2015**

**I.  Introduction**

  Plaintiff Dylan Roberts ("Roberts") has filed this lawsuit against Defendants Town of Bridgewater, Robert Gray, Jr. ("Gray") and Lisa M. Mitton ("Mitton") (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983 and § 1985(3) and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. c. 12, § 11, as well as claims of negligence and abuse of process. D. 1-1. Defendants have moved to dismiss several counts of the complaint. D. 5. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART the motion.

**II.  Standard of Review**

  In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Sec. & Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir.

1

2010) (noting that "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal"). To state a plausible claim, it need not contain detailed factual allegations, but the claim must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citation omitted). This determination requires a two-step inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

First, the Court must distinguish between the factual allegations and the conclusory legal allegations in the complaint. Id. Second, taking the plaintiff's allegations as true, the Court should be able to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, a claim must at the very least contain sufficient factual matter that, accepted as true, would allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[i]n determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" Id. (internal citations omitted) (alteration in original).

### III.   Factual Background

Unless otherwise indicated, the following facts are as alleged in the complaint, D. 1-1, and are taken as true for the purposes of this motion.

On March 17, 2012, Roberts was a customer at the Broad Street Pub in the Town of Bridgewater. Id. ¶ 5. That evening a fight broke out in the pub that led to more fights outside on the sidewalks and street. Id. ¶ 6. Roberts was not a participant in the fights, did not throw

any punches and was not struck with any punches. Id. ¶¶ 7-8.  At some point during the fights, the Bridgewater Police Department was called and multiple officers were dispatched to the scene. Id. ¶ 9.  Officers Mitton and Gray were the first officers to arrive. Id. ¶ 10.  Shortly after arriving at the scene, Officers Mitton and Gray tackled Roberts to the ground and Officer Gray, with the assistance of Officer Mitton, used excessive force to break Roberts's left arm. Id. ¶¶ 11, 12.  Although Roberts did not resist the officers, he was later charged with resisting arrest. Id. ¶¶ 13, 16-17.  Sometime later, an ambulance arrived and Roberts was taken to Brockton Hospital where he had surgery to insert a rod and multiple screws into the humerus bone of his left arm to repair a spiral fracture. Id. ¶ 14.

Roberts alleges that after Officers Mitton and Gray graduated from the police academy, the Town of Bridgewater did not provide them any additional training on proper and legal takedown methods. Id. ¶ 15.  Roberts further alleges that, in an attempt to cover up their actions, the officers wrote false police reports that led to Roberts being wrongly charged with resisting arrest. Id. ¶¶ 16-17.

Subsequently, Sergeant Lawrence J. Bresciani of the Bridgewater Police Department, who was also present at the scene, conducted an internal affairs investigation into Roberts's injury and arrest. Id. ¶ 18.  At the beginning of his investigation, Sergeant Bresciani determined that his relative, Andrew Bresciani, a police officer with the Town of Hull, was a witness to the events and asked him to provide a statement. Id. ¶ 19.  Sergeant Bresciani did not disclose any potential conflict of interest to his superiors or remove himself from the investigation. Id. ¶ 20.  Andrew Bresciani provided a written statement that was "highly exculpatory" regarding Roberts's innocence, stating, for example, that Roberts did not resist arrest. Id. ¶ 21.

Nevertheless, Sergeant Bresciani concluded that Officers Mitton and Gray used reasonable force and neither officer was disciplined.  Id. ¶¶ 23-24.

The criminal charges filed against Roberts were eventually dismissed after more than seven court appearances.  Id. ¶ 25.  The charges were dismissed for lack of probable cause and because the Bridgewater Police Department intentionally and deliberately failed to provide Roberts with Andrew Bresciani's statement despite a direct order from the presiding judge to do so.  Id.  During discovery, Roberts also learned that the Town of Bridgewater has had a custom and policy for the past ten years of not providing exculpatory evidence.  Id. ¶ 26.

## IV.   Procedural History

Roberts instituted this action in Plymouth Superior Court on January 12, 2015, D. 1-1, and Defendants removed the action on February 4, 2015, D. 1.  Defendants subsequently moved to dismiss the majority of Roberts's claims.  D. 5.  Specifically, Defendants seek to dismiss Roberts's claims of negligence (count I), violation of § 1983 for failure to train and discipline against the Town of Bridgewater (count II(b)), violation of § 1985(3) (count III), violation of the MCRA (count IV) and abuse of process (count V).  Id.  The Defendants do not seek dismissal of Roberts's allegation of excessive force under § 1983 against Officers Mitton and Gray (count II(a)).  The Court heard the parties on the pending motion and took this matter under advisement.  D. 12.

## V.   Discussion

### A.   Negligence Claims Against Town of Bridgewater (Count One)[1]

---

[1] Although Roberts initially asserted negligence claims against all Defendants, D. 1-1 ¶¶ 30-33, Roberts now concedes that his negligence claims "should only be directed at the Defendant Town of Bridgewater," D. 9 at 2 n.1.  Accordingly, the Court DISMISSES Roberts's negligence claim against Officers Mitton and Gray.

4

Defendant Town of Bridgewater (or "Town") argues that Roberts's negligence claim against it should be dismissed because the complaint does not allege negligent conduct by the officers and municipalities cannot be held liable for claims arising out of intentional torts. D. 6 at 5 (quoting Mass. Gen. L. c. 258, § 10(c) and Sheehy v. Town of Plymouth, 948 F. Supp. 119, 122 (D. Mass. 1996)). Moreover, the Town argues that the complaint does not offer any facts to support the conclusory allegation that it failed to train, discipline or supervise its employees. Id.

Under Massachusetts law, public employees are immune from suit for negligent acts performed within the scope of their official duties. See Mass. Gen. L. c. 258, § 2; Breault v. Chairman of Bd. of Fire Comm'rs, 401 Mass. 26, 35 (1987). Instead, public employers maintain liability for the negligent acts of public employees committed within the scope of their employment. See Mass. Gen. L. c. 258, § 2; Parker v. Chief Justice for Admin. and Mgmt. of the Trial Court, 67 Mass. App. Ct. 174, 178 (2006). The Massachusetts Tort Claims Act ("MTCA") provides in relevant part: "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. L. c. 258, § 2. Defendants are correct, however, that under the MTCA public employers are not liable for claims arising directly out of an employee's intentional tort. Mass. Gen. L. c. 258, § 10(c) (noting that "any claim arising out of an intentional tort, including assault, battery . . ." is exempt from coverage); see MacLean v. Delinsky, 407 Mass. 869, 878 n.6 (1990).

The issue, then, is whether Roberts's negligence claim arises out of an intentional tort allegedly committed by Officers Mitton and Gray or whether the claim arises out of negligent and wrongful conduct. To the extent that Roberts seeks to ground his negligence claim against the Town in his allegations that the officers tackled him to the ground and used excessive force

to break his arm, D. 1-1 at ¶¶ 11-12, "assault and battery is, by definition, an intentional tort for which the Town cannot be held liable." Titus v. Town of Nantucket, 840 F. Supp. 2d 404, 411 (D. Mass. 2011); see Doe v. Town of Blandford, 402 Mass. 831, 838 (1988) (noting that "[t]he Legislature, by excluding intentional torts from the waiver of governmental immunity, sought to insulate the government from liability for intentional conduct which it had not authorized").

While the Town cannot be liable for negligence based on the alleged assault and battery that resulted in Roberts' injury, it may be found liable for its own negligence in failing to train or supervise its officers. Sheehy, 948 F. Supp. at 121–26 (permitting negligence claim where plaintiff, after being illegally arrested, alleged that defendants carelessly and negligently investigated the case and misstated or failed to disclose relevant exculpatory information); Hathaway v. Stone, 687 F. Supp. 708, 711 (D. Mass. 1988) (permitting negligence claim where plaintiff, after his arrest and assault and battery by a police officer, alleged that the city was negligent in training, supervising, and continuing to employ the officer). Here, as to Count I, the negligence claim, Roberts has alleged that the Town was negligent in "failing to adequately train, discipline, and/or supervise employees." D. 1-1 ¶ 32c. Specifically, Roberts alleges that after Officers Mitton and Gray graduated from the police academy the Town provided them with no further training "on the proper and legal take down methods of an individual," id. ¶ 15, and that the Town performed a biased investigation, id. ¶¶ 18-24, which resulted in no discipline of the officers, id. ¶ 24. Roberts further alleges that the Town's investigation failed to appropriately consider exculpatory evidence or provide it to Roberts, id. ¶¶ 21, 23, 25, even though this evidence suggested that Officers Mitton and Gray had filed false police reports, id. ¶¶ 16-17, 21.

Finally, as to Roberts's allegations regarding the failure of the Town to provide exculpatory evidence, at oral argument the Town seemed to suggest that because the case against

6

Roberts was ultimately dismissed there was, in fact, no harm inflicted here.  Although the charges were eventually dismissed, there is harm alleged here where the Town's alleged negligence led to Roberts's broken arm, D. 1-1 ¶¶ 12, 14, and where Roberts has faced allegedly wrongful criminal charges and has been forced to defend himself against same at over seven court appearances, id. ¶¶ 16-17, 25.

At the motion to dismiss stage, the Court cannot say, based upon the facts alleged and drawing all inferences in favor of Roberts, the non-movant, that Roberts cannot prove any set of facts that would support his claim of negligence against the Town of Bridgewater for failure to train, discipline and supervise its employees.  Accordingly, the Court will not dismiss Roberts's negligence claim against the Town.

### B. Violation of § 1983 Claim for Failure to Train and Discipline Officers (Count II(b))

Roberts further alleges that the Town of Bridgewater violated § 1983 by failing to adequately train and discipline its police officers.  D. 1-1 ¶ 42.  Defendants argue that Roberts has failed to identify any official policy that caused the constitutional violation at issue.  D. 6 at 8.  To determine whether Roberts has sufficiently alleged a § 1983 claim against the Town of Bridgewater, the court must consider:  (1) whether Roberts's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation.  Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992); see Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25-26 (1st Cir. 2005).

For the purposes of a § 1983 claim, "[i]t is well established that a municipality is not liable for the tortious actions of its employees simply by virtue of the employment relationship." McElroy v. City of Lowell, 741 F. Supp. 2d 349, 353 (D. Mass. 2010) (citing Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)); Gaudreault v. Municipality of Salem, Mass., 923

7

F.2d 203, 209 (1st Cir. 1990) (noting that municipal liability cannot be premised on theory of respondeat superior). "Instead, under Monell and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury." Morrissey v. Town of Agawam, 883 F. Supp. 2d 300, 315 (D. Mass. 2012) (quoting Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 149 (D. Mass. 2012) (citing Monell v. Dep't. of Social Servs. of City of New York, 436 U.S. 658, 694 (1978))); Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (noting that to establish municipal liability, "a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged"). In other words, a plaintiff must establish "both the existence of a policy or custom and a causal link between that policy and the constitutional harm" to impute liability to a municipality. Santiago, 891 F.2d at 381; see also Polk Cty. v. Dodson, 454 U.S. 312, 326 (1981) (noting that municipal policy must be the "moving force of the constitutional violation" for liability to attach) (citation omitted).

The municipal policy may either be: (1) an official policy articulated or adopted by a decision-maker; or (2) an unofficial custom as evidenced by widespread action or inaction. McElroy, 741 F. Supp. 2d at 353; see Parks v. Town of Leicester, No. 10-cv-30120-FDS, 2011 WL 864823, at *4 (D. Mass. Mar. 9, 2011) (noting that "[i]n some instances, the 'policy or custom' consists of the manner in which employees are trained or supervised"). To prove causation, Roberts must show that the Town's conduct amounted to "deliberate indifference" to the constitutional rights of those persons that police would encounter. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (noting that only where municipality's failure to train evidences a "deliberate indifference" can such a shortcoming be properly thought of as a city "policy" actionable under section 1983); Bordanaro v. McLeod, 871 F.2d 1151, 1158 (1st Cir. 1989).

Essentially, to prove the causal element under the "deliberate indifference" standard, a plaintiff must show that a municipality had: (1) knowledge of an obvious risk to the constitutional rights of persons police would come in contact with; and (2) that there was a conscious failure to act despite the obvious risk. McElroy, 741 F. Supp. 2d at 356 (citing Canton, 489 U.S. at 390); see Porto v. Town of Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007) (noting that deliberate indifference is "'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action' or inaction") (citation omitted). A pattern of constitutional violations together with a failure on the part of a municipality to properly respond could permit the reasonable inference that the municipality had the requisite knowledge and consciously failed to act in a manner that satisfies the deliberate indifference element. See Canton, 489 U.S. at 397.

Here, Defendants argue that Roberts's complaint does not point to any official policy that led to his injuries. Indeed, Roberts alleges the absence of any policy at all. D. 1-1 at ¶¶ 15, 42. Specifically, Roberts alleges that the Town does not provide any training in proper takedown methods and techniques or in the proper arrest methods and procedures. Id. ¶ 42. Moreover, the complaint alleges that Officers Gray and Mitton had not received any training in takedown methods since they graduated from the police academy. Id. ¶ 15. To the extent that the Town argues, because Officers Gray and Mitton received training at the academy, Roberts cannot show deliberate indifference, at this nascent stage of litigation before discovery has been conducted, the Court cannot agree. Kibbe v. City of Springfield, 777 F.2d 801, 803 (1st Cir. 1985) (noting that municipalities can be liable "either for failing to implement a training program for its officers or for implementing a program that was grossly inadequate to prevent the type of harm suffered by the plaintiff" (citation omitted)). Accepting the allegations as true, then, the Court can infer, at least, a municipal custom of providing inadequate training to its officers in

takedown and arrest techniques, see McElroy, 741 F. Supp. 2d at 354, which is an area where the need for "training is so obvious" that its absence is "likely to result in the violation of constitutional rights" such that the Town "can reasonably be said to have been reasonably indifferent to the need." Jackson v. Inhabitants of Town of Sanford, No. 94-12-P-H, 1994 WL 589617, at *5 (D. Me. Sept. 23, 1994) (quoting Bordanaro, 871 F.2d at 1159).

Although "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1360 (2011) (citations omitted), Roberts has alleged that "the Town of Bridgewater has had a custom and policy for the past 10+ years of not providing exculpatory evidence in cases" to protect its officers in "clear and serious violation of [people's] constitutional rights." D. 1-1 ¶ 26. These allegations, at a minimum, suggest that the Town had notice of constitutional violations committed by its officers, exacerbated by inadequate training and discipline, and was deliberately indifferent to the rights of its residents who interacted with those officers. Accepting the allegations as true and drawing reasonable inferences in favor of Roberts, then, the Court does not conclude that the complaint fails to state a failure to train and discipline claim under § 1983.

### C.     Conspiracy in Violation of 42 U.S.C. § 1985(3) (Count Three)

Roberts also alleges that Defendants engaged in a conspiracy to violate his federal civil rights in violation of 42 U.S.C. § 1985(3). To assert a claim under § 1985(3), Roberts must: (1) allege a conspiracy; (2) allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; (3) identify an overt act in furtherance of the conspiracy; and (4) show either injury to person or property, or a deprivation of a constitutionally protected right. See Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). Additionally, it has long

been established that a claim under § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Therefore, Roberts "must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious."  See Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) (interpreting Griffin).

The Court agrees with Defendants that Roberts's complaint contains no factual allegations to support a conspiracy claim motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Id. at 3; see D. 6 at 12.  The complaint alleges that "Officers Gray and Mitton entered into an unlawful agreement with one another (and/or with other persons not named as defendants in this lawsuit)" and the Town of Bridgewater also "did conspire to deprive [] Roberts of his rights . . . ."  D. 1-1 ¶ 45.  The complaint contains no facts to even suggest, however, that the alleged conspiracy was motivated by a discriminatory animus.[2]  As such, Roberts's complaint fails to state a valid claim under § 1985(3).  Accordingly, the Court ALLOWS Defendants' motion to dismiss as to this claim.

### D.     Violation of the MCRA (Count Four)

Roberts alleges that Officers Mitton and Gray have violated the MCRA, Mass. Gen. L. c. 12, § 11.[3]  The MCRA provides that any person who interferes, or attempts to interfere, with

---

[2] In his opposition, Roberts claims that he belongs to a class of people for which § 1985(3) offers protection because "[a]rrestees or detainees are a specific and identifiable class of people against whom the Defendants have discriminated."  D. 9 at 5 (citing Aulson, 83 F.3d at 5).  "[A] class cannot be defined solely on the basis of the harm inflicted," however, but "must be identifiable by reference to "something more than . . . [the members'] desire to engage in conduct that the § 1985(3) defendant disfavors."  Aulson, 83 F.3d at 5 (alteration in original) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993)).

[3] Although Roberts initially asserted an MCRA claim against the Town of Bridgewater, D. 1-1 ¶¶ 50-54, Roberts now concedes that his MCRA claims "should only be directed at

another's exercise or enjoyment of rights secured by the constitution or laws of the United States or the Commonwealth may be liable, id. § 11I, so long as such interference or attempted interference was made by threats, intimidation, or coercion. Id. § 11H; see Layne v. Superintendent, Mass. Corr. Inst., 406 Mass. 156, 158 (1989) (recognizing that the essential element of an MCRA violation is threatening, intimidating or coercive conduct). In enacting the MCRA, the legislature intended to provide a state law remedy for the deprivation of civil rights that extended beyond the limits of federal law by incorporating private action within its bounds. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 821 (1985) (noting that "[t]he [MCRA] encompassed private action where otherwise 'State action' would be required").

To bring a claim under the MCRA, the plaintiff must show that "1) his exercise or enjoyment of rights secured by the federal or state constitutions or laws 2) has been interfered with, or attempted to be interfered with, and 3) the interference or attempted interference was by 'threats, intimidation, or coercion.'" Stone v. Caswell, 963 F. Supp. 2d 32, 37 (D. Mass. 2013) (quoting Haufler v. Zotos, 446 Mass. 489, 504 (2006)). Essentially, "[t]he MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." Spencer v. Roche, 755 F. Supp. 2d 250, 267 (D. Mass. 2010). The question of whether the alleged actions constitute threats, intimidation or coercion for purposes of the MCRA must be evaluated by determining whether a reasonable person in Roberts's situation would have felt threatened, intimidated or coerced. See Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009).

---

Defendants Gray and Mitton," D. 9 at 6 n.2. Accordingly, the Court DISMISSES Roberts's MCRA claim against the Town of Bridgewater.

Here, Defendants argue that the complaint does not support the allegation that Officers Mitton and Gray violated Roberts's rights "by means of threats, intimidation or coercion." D. 6 at 12. Roberts does allege that the Defendants violated his rights under MCRA through the use of excessive force, however, Roberts also alleges that Defendants' attempted to conceal their actions by falsely charging him with resisting arrest, withholding exculpatory evidence and continuing to pursue unsupported criminal charges against him. D. 1-1 ¶¶ 16-17, 25-26. Roberts argues that Defendants' abusive use of criminal court proceedings was intended "to threaten, intimidate and/or coerce" Roberts not to pursue redress against Defendants for their excessive use of force. D. 9 at 6.

Accepting as true the facts recited in the complaint and drawing all inferences in Roberts's favor, the Court concludes that, as alleged, Defendants attempted to interfere with Roberts's right to pursue redress for his injuries by threatening him with criminal charges and continued to intimidate and coerce him by pursuing those charges. Moreover, the Court notes that "[a]n arrest without probable cause has been found to constitute coercion within the meaning of the MCRA." Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 n.8 (D. Mass. 2011) (collecting cases); see Santiago, 891 F.2d at 383 (explaining that where a plaintiff "alleged that he was illegally arrested and claimed that the arrest gave rise to . . . violations of 42 U.S.C. § 1983 and Mass. Gen .L. c[]. 12, § 11I" that "[i]f there was no probable cause for [the plaintiff's] arrest, he can seek redress under [the MCRA]"); cf. Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 473 (1994) (recognizing that defendants' invasion and blockade of abortion clinics violated the MCRA because the "case involved more than simple direct action in denial of the rights of women seeking abortion services" but noting that if "direct action also includes threats against, or intimidation or coercion of, a particular individual or individuals,

liability under the MCRA can be established, and will be established if such threats, intimidation, or coercion interfered with that individual's exercise or enjoyment of rights secured by law"). Accordingly, the Court will not dismiss the MCRA claims against Defendants Gray and Mitton.

### E.     Abuse of Process (Count Five)

To sustain an abuse of process claim, a plaintiff must show that "(1) 'process' was used (2) for an ulterior or illegitimate purpose (3) resulting in damage." Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986) (quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975)).  In essence, abuse of process "is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 142 (D. Mass. 2007) (citation omitted).  Unlike a malicious prosecution claim, "probable cause is irrelevant to an abuse of process claim." Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 407-08 (2002).  Indeed, "[i]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them." Id. at 408.

As a threshold matter, Defendants are correct that Roberts's abuse of process claim against the Town of Bridgewater fails as the MTCA does not waive municipal immunity with respect to "any claim arising out of an intentional tort, including . . . false arrest, intentional mental distress, malicious prosecution [and] malicious abuse of process." Mass. Gen. L. c. 258, § 10(c).  Accordingly, the Court concludes that Roberts has not stated a claim for abuse of process against the Town of Bridgewater.

Roberts argues, however, that Officers Gray and Mitton "filed false reports and maliciously instituted a criminal case against [Roberts] all in an attempt to cover up their actions and intimidate [Roberts] to not pursue any civil or criminal remedies against the Defendants." D. 9 at 7. Taking Roberts's allegations as true, the complaint alleges that Defendants Mitton and Gray initiated and pursued proceedings against Roberts for an improper purpose. Roberts has alleged that the officers wrote false reports and pursued criminal charges after injuring Roberts and while aware of an exculpatory witness statement. D. 1-1 ¶¶ 16-17, 19, 21, 25. Given the circumstances alleged, the Court will not dismiss Roberts's abuse of process claim against Officer Mitton and Gray.

## VI.  Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion as to Count I (negligence) against Officers Mitton and Gray, DENIES Defendants' motion as to Count II(b) (§ 1983 claim as to failure to train and discipline) against the Town, ALLOWS Defendants' motion as to Count III (the § 1985(3) conspiracy claim), and ALLOWS Defendants' motion as to Counts IV (the MCRA claim) and V (the abuse of process claim) against the Town of Bridgewater, D. 5. Accordingly, the Court DISMISSES Count I against Officers Mitton and Gray, DISMISSES Count III against all Defendants and DISMISSES Counts IV and V against the Town of Bridgewater.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge